EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| McNeil Healthcare, LLC<br><br>Recurrida<br><br>v.<br><br>Municipio de Las Piedras, *et al.* [II] | Certiorari<br><br>2021 TSPR 33<br><br>206 DPR ____ |

Número del Caso: CC-2018-502


Fecha: 15 de marzo de 2021


Tribunal de Apelaciones:

    Región Judicial de Humacao


Abogados de la parte peticionaria:

    Lcdo. Eduardo H. Martínez Echevarría
    Lcda. Lourdes C. Morera Ledón
    Lcdo. Miguel Eliza Rivera

Abogados de la parte recurrida:

    Lcdo. Juan A. Marqués Díaz
    Lcdo. Rubén Muñiz Bonilla
    Lcda. Yahaira De la Rosa Algarín




Materia: Derecho Procesal Civil- Los borradores del informe pericial de un perito testigo así como las comunicaciones habidas entre éste y el abogado de la parte que lo contrata con relación a tales informes, no están protegidas por la doctrina del work product. Esos documentos y comunicaciones están sujetas al descubrimiento de prueba amplio y liberal que rige en nuestro ordenamiento jurídico.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| McNeil Healthcare, LLC<br><br>    Recurrida<br><br>        v.<br><br>Municipio de Las Piedras,<br>*et al.* [II]<br><br>    Peticionarios | CC-2018-502 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 15 de marzo de 2021.

El presente caso nos provee la oportunidad para determinar si los borradores de un perito testigo así como las comunicaciones entre éste y el abogado de la parte que lo contrata están protegidas bajo la doctrina del producto del trabajo del abogado (*work product*). Adelantamos que, ante la ausencia de una protección estatutaria expresa a este tipo de materiales y comunicaciones, ambas están sujetas al descubrimiento de prueba amplio y liberal que impera en nuestro ordenamiento jurídico. Veamos.

## I.    Tracto fáctico y procesal

El 28 de julio de 2016, McNeil Healthcare, LLC (McNeil o recurrida) presentó una demanda contra el Municipio de Las Piedras (Municipio), su Alcalde, el Hon. Miguel A. López Rivera (Alcalde), y la Sra. Cathy Negrón Hernández (señora Negrón Hernández)[1] (en conjunto, peticionarios),

---

[1]    Tanto el Alcalde, el Hon. Miguel A. López Rivera, como la Sra. Cathy Negrón Hernández, comparecen en su carácter oficial.

por medio de la cual impugnó el cobro de unas deficiencias de pago de patentes municipales que le fueron notificadas el 29 de junio de 2016.[2]

Luego de ciertos trámites procesales, el Municipio cursó a McNeil un *Primer interrogatorio y requerimiento para la producción de documentos*.[3] Como parte de su contestación al mismo, McNeil identificó como perito al CPA Kenneth Rivera Robles (CPA Rivera Robles), e indicó que éste le asistió en la preparación de las contestaciones del interrogatorio. Indicó también que se le contrató para emitir "su opinión sobre el tratamiento económico, contable y tributario de los gastos reembolsables que fueron objeto de las notificaciones finales de deficiencias que se impugnan en este caso".[4]

Así las cosas, McNeil le remitió al Municipio copia del informe pericial del CPA Rivera Robles,[5] a quien posteriormente depusieron.[6] Como parte de esta deposición surgieron los siguientes intercambios:

. . . . . . . .

---

[2]   Véase *Demanda*, Apéndice del *certiorari*, págs. 60-150.

[3]   Véase *Primer interrogatorio y requerimiento para la producción de documentos*, Apéndice del *certiorari*, págs. 162-178.

[4]   Véase *Contestaciones y/u objeciones a primer interrogatorio y requerimiento para la producción de documentos*, Apéndice del *certiorari*, págs. 185-186.

[5]   Véase *Informe pericial sobre tratamiento económico, contable, y tributario de los gastos reembolsables*, Apéndice del *certiorari*, págs. 579-600.

[6]   Véase *Deposición de Kenneth Rivera Robles*, Apéndice del *certiorari*, págs. 308-578.

P. Okey. Mire, Kenneth, le pregunto en relación a la encomienda que se le ha dado en este caso. ¿Cuál fue la encomienda que se le dio a usted en este caso?

R. A nosotros lo que nos piden es que opinemos en cuanto al tratamiento contributivo de un pago que está recibiendo una empresa en el contexto de contribución sobre patente municipal y si el pago iba a estar sujeto a ese pago o no iba a estar sujeto a ese pago en nuestra opinión.

P. ¿En su opinión?

R. Um-jum.

P. ¿Si ese pago iba a estar sujeto al pago de patente municipal conforme a la [L]ey de [P]atentes [M]unicipales?

R. Sí.

P. O sea, ¿su opinión y su análisis es un análisis jurídico?

R. No necesariamente jurídico porque ya la cuestión jurídica, pues, los compañeros abogados están radicando la demanda y ya la tenían cubierta. Así, pues, es una cuestión ya más de enfoque de la contribución, de la política de la contribución, qué se pretende y qué se quiere hacer con esa.

P. No entendí, si me explica.

R. Básicamente --

P. ¿Usted determinó si ese pago debía estar sujeto a contribución patente?

R. Sí. O sea, que si eso fue parte del análisis es lo que me está preguntando.

P. Sí.
R. Sí, eso fue parte de mi análisis.

P. ¿Y su conclusión está basada en eso?

R. Ajá.

P. ¿Usted hizo ese análisis en función de la [L]ey de [P]atentes [M]unicipales?

R.    Miramos    la    [L]ey   de   [P]atentes [M]unicipales.

P. Usted dice que le pidieron. ¿Quién le pidió a usted que llevara a cabo ese análisis?

R. El licenciado Rubén Muñiz es el primero que nos contacta. Después nos reunimos con el [Lcdo.] Juan Marqués también.

P. ¿Cuándo fue la primera vez que lo contactaron?

R. La primera vez que ellos me contactan, y le estoy diciendo de memoria porque me acuerdo que estaba fuera de Puerto Rico, fue en julio de 2017. Me reúno con ellos un poco más tarde, me imagino a finales de julio o a principios de agosto de 2017.

P. ¿En aquella ocasión qué fue lo que discutieron?

LCDO. MARQUÉS: Objeción. Le vamos a instruir al testigo que no conteste esa pregunta. El contenido de las discusiones entre el abogado y el perito está protegido, el "work-product" y materiales de preparación de juicio. Así que estamos instruyendo al testigo que no conteste esa pregunta.

LCDO. MARTÍNEZ: Don Kenneth, si nos excusa un rato porque vamos a tener una conversación con la Honorable Juez sobre ese asunto.

EL DEPONENTE: Okey.

POR LA [sic] LCDO. MARTÍNEZ:

P. Pues, a usted se lo vamos a agradecer. Déjeme hacerle una pregunta antes de que se vaya, don Kenneth. ¿En la preparación de su opinión usted tomó en consideración todas aquellas cosas que discutió con sus abogados?

R. ¿Cómo que todas aquellas cosas que discutí con los abogados?

P. ¿Las cosas que usted pudo haber discutido con sus abogados usted las tomó en consideración a la hora de hacer su análisis y expedir su opinión?

R. No entiendo la pregunta. O sea, yo discuto las cosas con ellos y ellos me dan los documentos. Esas fueron las cosas que yo tomé en consideración.

P. Okey. Muchas gracias.

.    .    .    .    .    .    .    .

P. […] ¿Y en ese proceso de preparar esta opinión discutió usted sus hallazgos con los abogados antes de llevar a cabo la firma de la opinión?

R. No.

P. No se compartió con nadie. ¿Y en ese proceso de preparar esta opinión discutió usted sus hallazgos con los abogados antes de llevar a cabo la redacción de la opinión?

**R: Nosotros hicimos preliminarmente como un bosquejo que tendemos a trabajar. Esto se discute con ellos. Se hace la opinión y se discute con ellos cuando se prepara.**

P. O sea que --

R. Ya una vez preparada.

P. ¿Una vez preparada?

R. O sea, no fue que estuvimos comunicándonos constantemente durante la redacción de la misma.

P. ¿Y se les envía en borrador se les envía en final?

**R. Sí. Ellos tienen una versión en borrador.**

P. ¿En borrador?

**R. Se les envía en borrador, sí. Es la primera vez que ellos ven el documento.**

**P. ¿En este caso recibió comentarios de ese borrador?**

**R. Sí.**

**P. ¿Recibió comentarios del borrador?**

R. **Um-jum.**

P. **¿Hizo algunos cambios a su opinión [a] base a esos comentarios de los abogados?**

R. **Sí.** Además del análisis que habíamos hecho basándonos en la ley y los parámetros que se usaron, también hicimos unos análisis en cuanto a los casos. Pues, ahí nos comentaron, "**[m]ira, cámbiate**"

**LCDO. MARQUÉS: Objeción. No entres al detalle de la conversación y la comunicación entre abogados y ustedes por los mismos fundamentos que señalamos anteriormente.**

LCDO. MARTÍNEZ: Vamos a dejar eso sobre la mesa.
Don Kenneth, **¿hay alguna razón - bueno, no sé si le pregunté. No sea condescendiente conmigo, verdad, porque le estoy repitiendo la pregunta. ¿Pero hay alguna razón por la cual descartó el análisis de jurisprudencia en su decisión, en su opinión?**

**LCDO. MARQUÉS: Objeción a la forma de la pregunta. En la medida en que la contestación no involucre conversaciones con abogados, puede contestar.**

**EL DEPONENTE: Pues, no puedo contestarla.**

LCDO. MARTÍNEZ: No me tiene que contestar. Ya sé la contestación. (Negrillas y subrayado añadido).**7**

Así las cosas, el 15 de diciembre de 2017 el Municipio presentó una *Solicitud de orden para compeler interrogatorios objetados so pena de exclusión de testimonio pericial*, donde alegó tener pleno derecho a que se le entregara toda la información y documentación considerada para la preparación del informe pericial.

---

**7**  Íd., pág. 348 (líneas 17-25); pág. 349 (líneas 1-25); pág. 350 (líneas 1-25); pág. 351 (líneas 1-25); pág. 358 (líneas 22-25); pág. 359 (líneas 1-25); pág. 360 (líneas 1-11); pág. 569 (líneas 10-24).

Esto debía incluir el *work product* compartido por los abogados de McNeil con el perito testigo, ya fuera a modo de comentarios a borradores, opiniones, instrucciones o cualquier otra comunicación. El Municipio cimentó su solicitud en el texto de la Regla 23.1 de Procedimiento Civil de 2009, *infra*, y lo expresado en S.L.G. Font Bardón v. Mini-Warehouse, *infra*. Solicitó también que, de no entregarse dicha información, se excluyera tanto del informe como del testimonio pericial. Indicó, además, haber agotado los remedios provistos por la Regla 34.2 de Procedimiento Civil de 2009, *infra*, las Reglas de Evidencia de 2009, *infra*, y por este Tribunal en S.L.G. Font Bardón v. Mini-Warehouse, *infra*.[8]

El 3 de enero de 2018 McNeil presentó una *Oposición a 'Solicitud de orden para compeler contestaciones a interrogatorios objetados …'*.[9] En ésta, ripostó que el Municipio pretendía ganar acceso a través del perito al *work product* de los abogados de McNeil en cuanto a información preparada y obtenida por el perito con anticipación al juicio, los borradores redactados por éste, y las comunicaciones entre el perito y los abogados de la recurrida. Expresó que la doctrina del *work product*

---

[8] Véase *Solicitud de orden para compeler interrogatorios objetados so pena de exclusión de testimonio pericial*, Apéndice del *certiorari*, págs. 271-279.

[9] Véase *Oposición a 'Solicitud de orden para compeler contestaciones a interrogatorios objetados …'*, Apéndice del *certiorari*, págs. 280-287.

o lo resuelto por este Tribunal en <u>S.L.G. Font Bardón v. Mini-Warehouse</u>, *infra*, no avalaban dicho proceder.

El 11 de enero de 2018, el Municipio presentó una *Réplica a oposición a solicitud de orden para compeler contestaciones a interrogatorios objetados so pena de exclusión del testimonio pericial*. En ésta reiteró que la Regla 23.1(c) de Procedimiento Civil de 2009, *infra*, no se enmendó para asemejarse a la Regla 26 de Procedimiento Civil Federal, *infra*, a los fines de excluir del descubrimiento de prueba los borradores de informes periciales. De igual modo, indicó que los abogados de McNeil decidieron compartir con el perito el *work product* correspondiente para que éste lo considerase como parte de su informe y rindiese una opinión al Tribunal. De esta forma, señaló que dicha información era esencial para que el Municipio preparara su defensa adecuadamente, en particular, el contrainterrogatorio a efectuarse al perito y la impugnación de éste y su informe.

Así las cosas, tras examinar la deposición tomada al CPA Rivera Robles, el 26 de enero de 2018 el Tribunal de Primera Instancia emitió una *Orden* en la que declaró "*No ha lugar*" lo solicitado por el Municipio.[10]

En desacuerdo, el 20 de febrero de 2018 el Municipio presentó un recurso de *certiorari* ante el Tribunal de

---

[10] Véase *Orden* emitida el 26 de enero de 2018, Caso Núm. HSCI201600701, Apéndice del *certiorari*, págs. 604-605.

Apelaciones. En esencia, solicitó al foro apelativo intermedio que interviniese y revocase la determinación del foro primario, por considerar que este último había abusado de su discreción "al no compeler a McNeil y/o su perito-testigo a divulgar y producir toda la información e instrucciones cursadas entre el perito-testigo y los abogados de McNeil, incluyendo las notas y borradores del informe que existan y/o los cambios que hizo el perito al mismo".[11] Indicó, además, que la intervención del foro apelativo intermedio procedía por varias razones, entre las que destacó que se estaba

> […] ante un caso en el que el perito-testigo reconoce que su único contacto y fuente de información han sido los abogados de McNeil; que con los abogados ha mantenido amplias comunicaciones; que hizo cambios a su informe a instancias de los abogados de McNeil; y que son los abogados de McNeil los que se niegan a permitir que el perito-testigo discuta y/o divulgue sus comunicaciones y los cambios que hizo a su informe reclamando privilegio de "work product" […].[12]

El 5 de marzo de 2018 McNeil presentó su *Memorando en oposición a que se expida el auto de certiorari*.[13] Entre otras cosas, indicó que el Municipio había tenido amplia oportunidad para interrogar al perito y obtener la prueba

---

[11] Véase *Certiorari*, Caso Núm. KLCE201800240, Apéndice del *certiorari*, pág. 17.

[12] Íd., pág. 10.

[13] Véase *Memorando en oposición a que se expida el auto de certiorari*, Caso Núm. KLCE201800240, Apéndice del *certiorari*, págs. 736-756.

pertinente; que los borradores y las comunicaciones solicitadas estaban fuera del alcance del descubrimiento de prueba; y que el foro primario actuó dentro de la discreción que le confería el ordenamiento jurídico. El peticionario replicó el 13 de marzo de 2018, en esencia, reiterando sus argumentos anteriores.[14]

El 20 de abril de 2018 el Tribunal de Apelaciones emitió *Sentencia*.[15] En la ponencia mayoritaria, el foro apelativo intermedio confirmó el proceder del Tribunal de Primera Instancia. Sintetiza su razonamiento en la siguiente expresión:

. . . . . . . .

Bajo nuestro ordenamiento procesal, en lo referente a los peritos que testificarán en el juicio, la Regla 23.1(c), la cual es equivalente, **en parte**, a la 26(b)(1) de las Reglas de Procedimiento Civil Federal, exige que la parte que propone al experto expresará la materia sobre la cual la persona perita declarará, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones del perito. **Es claro que la información requerida bajo la Regla 23.1(c), es descubrible y no está cobijada bajo la doctrina del producto del trabajo.**

**Nuestras reglas no atienden directamente la controversia en torno a si los borradores de los informes periciales y las comunicaciones entre abogado-perito son materia privilegiada y por tanto, no sujeta a descubrimiento de**

---

[14] Véase *Réplica a memorando en oposición a expedición del auto*, Apéndice del *certiorari*, págs. 757-765.

[15] Véase *Sentencia*, Caso Núm. KLCE20180240, Apéndice del *certiorari*, págs. 915-942.

**prueba**. Empero, **las Reglas de Procedimiento Civil Federal categóricamente establecen que la información solicitada por el Municipio constituye "work product" y que, en consecuencia, dicha parte no puede utilizar los mecanismos de descubrimiento de prueba para conseguir los borradores del informe pericial, ni los intercambios entre los abogados de McNeil y el perito Rivera Robles. Las Reglas 26(b)(4)(B) y 26(b)(4)(C) llenan un vacío en nuestro ordenamiento y muy persuasivamente nos arrojan luz para llegar a la determinación más justa**. Las mencionadas reglas crean un balance, toda vez que le permiten a la parte adversa tener suficiente información para contrainterrogar al perito y, a su vez, protegen la zona de privacidad del abogado que propone al perito, de manera que pueda prepararse adecuadamente para el juicio sin tener que incurrir en el excesivo gasto de contratar a múltiples expertos.

Así pues, a la luz de la Regla 40 de nuestro Reglamento, supra, **concluimos que el foro primario no erró al denegar la solicitud del Municipio, toda vez que el proceso mental del experto, el cual fue alimentado por la experiencia en litigio del abogado, está protegido y es producto del trabajo**. Durante ese proceso de colaboración entre abogado y perito el representante legal compartió sus impresiones mentales, conclusiones y teorías legales y, **por ende, las comunicaciones, instrucciones y borradores de los informes no son materia de descubrimiento de prueba.**

.   .   .   .   .   .   .   .

(Escolios omitidos, negrillas y subrayado añadidos).[16]

La *Sentencia* del Tribunal de Apelaciones contó también con un *Voto disidente*, el cual entendió que nuestra Regla

---

[16] Íd., págs. 929-930.

23.1(c) de Procedimiento Civil de 2009, *infra*, no había incorporado las enmiendas realizadas -hacía casi una década atrás- a la Regla 26 de Procedimiento Civil Federal, *infra*, por lo que el derecho vigente en Puerto Rico no prohibía el descubrimiento de los borradores de los peritos o las comunicaciones relacionadas habidas entre el perito testigo y los abogados de McNeil.[17] A su vez, razonó que la protección de la doctrina del *work product* no se extendía a dichos documentos o comunicaciones. Por tanto, manifestó que hubiese revocado la determinación del Tribunal de Primera Instancia. Añadió que siendo el Tribunal de Apelaciones un foro revisor intermedio le estaba vedado inmiscuirse "en la gestión legislativa, facultad que le ha sido delegada constitucionalmente a nuestra Asamblea Legislativa".[18]

Inconforme, el 23 de mayo de 2018 el Municipio presentó ante nos el recurso de *certiorari* que hoy atendemos. Alegó como único error que el Tribunal de Apelaciones incidió "al resolver que bajo nuestro ordenamiento la información e instrucciones provistas a un perito-testigo por los abogados, así como las notas del perito-testigo y los borradores del informe pericial constituyen materia privilegiada que no está sujeta a

---

[17] Íd., págs. 932-942. (Lebrón Nieves, J., Voto disidente).

[18] Íd., pág. 942.

descubrimiento".[19]  El 29 de junio de 2018 emitimos una *Resolución* en la que expedimos el auto de *certiorari* solicitado.[20] Contando con la comparecencia de las partes, estamos en posición de resolver.

## II.    Derecho aplicable

### A.    *El proceso de descubrimiento de prueba*

El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias […] para hacer valer sus derechos". I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., San Juan, LexisNexis, 2000, pág. 70.  Los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, por lo que los foros apelativos no deben intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. Rivera y otros v. Bco. Popular, 152 DPR 140, 254-155 (2000).  Este criterio también concierne a la intervención de los foros apelativos con las determinaciones interlocutorias de los tribunales de primera instancia. Meléndez v. Caribbean Int'l. News, 151 DPR 649, 664 (2000).

---

[19]  Véase *Certiorari*, recurso Núm. CC-2018-0502, pág. 8.

[20]  Véase *Resolución* del 29 de junio de 2018, recurso Núm. CC-2018-0502.

Ya desde <u>Sierra v. Tribunal Superior</u>, 81 DPR 554, 560 (1959) reconocimos lo valioso y necesario que resulta un descubrimiento de prueba amplio y liberal. Esto debido a que, haciéndose buen uso de este mecanismo, se aceleran los procedimientos, se propician las transacciones y se evitan también las sorpresas indeseables durante la celebración del juicio. <u>Lluch v. España Service Sta.</u>, 117 DPR 729, 743 (1956). Véanse, además: <u>Casasnovas *et al.* v. UBS Financial *et al.*</u>, 198 DPR 1040, 1054-1055 (2017); <u>Berríos Falcón v. Torres Merced</u>, 175 DPR 962, 971 (2009). De igual modo, el descubrimiento de prueba propende a "una mayor flexibilidad y cooperación entre las partes". <u>Vincenti v. Saldaña</u>, 157 DPR 37, 54 (2002) (citado en <u>Casasnovas *et al.* v. UBS Financial *et al.*</u>, *supra*, pág. 1054). Tal espíritu se mantuvo en la redacción de la Reglas de Procedimiento Civil de 2009, producto del Proyecto de las Reglas de Procedimiento Civil preparado por el Comité Asesor Permanente de las Reglas de Procedimiento Civil, según aprobado por esta Curia y posteriormente enmendado por la Asamblea Legislativa. Véase <u>*In re* Aprobación Rs. Proc. Civil</u>, 176 DPR 673 (2009); Ley Núm. 220-2009, según enmendada, conocida como Reglas de Procedimiento Civil de 2009, *infra*. Lo anterior, según el trámite dispuesto en el Artículo V, Sección 6, de la Constitución de Puerto Rico. Art. V, Sec. 6, Const. PR, LPRA, Tomo 1. Así, pues, el reconocimiento de un descubrimiento de prueba amplio y liberal resulta

cónsono con el texto de nuestra actual Regla 23.1(a) de Procedimiento Civil, 32 LPRA Ap. V, la cual dispone:

> Las partes podrán hacer descubrimiento de prueba sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documento u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada no sea admisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. Íd.

Vemos en la regla anteriormente transcrita que al descubrimiento de prueba le son oponibles sólo dos (2) limitaciones: (1) pertinencia y (2) privilegio. Ponce Adv. Med. v. Santiago González *et al.*, 197 DPR 891, 898-899 (2017); Alvear Maldonado v. Ernst & Young LLP, 191 DPR 921, 925 (2014).[21] Al referirnos a la pertinencia, debemos interpretarla de manera amplia. E.L.A. v. Casta, 162 DPR 1, 12 (2004); General Electric v. Concessionaires, Inc., 118 DPR 32, 40 (1986). Por tanto, hemos expresado que la prueba pertinente es aquella que produzca o pueda producir, entre otras:

> (a) prueba que sea admisible en el juicio; (b) hechos que puedan servir para descubrir

---

[21] Véase también: Alfonso Brú v. Trane Export, Inc., 155 DPR 158, 167-168 (2001); Meléndez v. Levitt & Sons of P.R., Inc., 104 DPR 895, 899 (1976); J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., Colombia, [Ed. del autor], 2012, pág. 162.

evidencia admisible; (c) datos que puedan facilitar el desarrollo del proceso; (d) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (e) datos que puedan servir para impugnar la credibilidad de los testigos; (f) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; (g) nombres de los testigos que la parte interrogada espera utilizar en el juicio. Sierra v. Tribunal, 81 DPR 554, 573 esc. 10 (1959). Véanse también: E.L.A. v. Casta, *supra*, pág. 13; Alvarado v. Alemañy, 157 DPR 672, 683 (2002) (citando a García Rivera *et al.* v. Enríquez, 153 DPR 323, 334 (2001)); J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, Tomo III, pág. 839.

De otra parte, en cuanto a la materia privilegiada se refiere -interpretando la antigua Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. III- precisamos que es aquella que se encuentra dentro del alcance de alguno de los privilegios reconocidos en las Reglas de Evidencia. Ponce Adv. Med. v. Santiago González, *supra*, pág. 899. Véanse también: E.L.A. v. Casta, *supra*, pág. 10; Rivera Alejandro v. Algarín, 112 DPR 830, 833 (1982); Sierra v. Tribunal Superior, *supra*, pág. 572.

El caso ante nuestra consideración requiere que prestemos particular atención a la materia de los privilegios, específicamente, a aquel relacionado con la doctrina del *work product*.

### B. El work product y su relación con las Reglas de Procedimiento Civil

#### 1. Puerto Rico

El *work product* "consiste de esa información que [el abogado] ha reunido y las impresiones mentales, teorías legales y estrategia que él persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorándums, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles e intangibles". Casasnovas *et al*. v. UBS Financial *et al*., *supra*, pág. 1056 (citando a Ades v. Zalman, 115 DPR 514, 525 esc. 3 (1984)).[22] Para apreciar el alcance del *work product* en nuestro ordenamiento civil, resulta necesario referirnos a la Regla 23.1(b) de dicho cuerpo de reglas, la cual dicta, en lo pertinente, lo siguiente:

. . . . . . . .

(b) Documentos, objetos y otra prueba obtenida en preparación para el juicio.- Sujeto a las disposiciones del inciso (c) de esta regla, una parte podrá hacer descubrimiento de documentos y objetos que, con anterioridad al pleito o para el juicio, hayan sido preparados por o para otra parte, o por o para el(la) representante de dicha parte, incluyendo a su abogado o abogada, consultor(a), fiador(a), asegurador(a) o agente. **Estarán fuera del alcance del descubrimiento las impresiones mentales, conclusiones, opiniones o teorías legales sobre el caso, del abogado o abogada o de cualquier otro(a) representante de una parte.** Una parte podrá requerir de la otra una lista de las personas testigos que la parte solicitada intenta utilizar en el juicio, así como un resumen breve de lo que se propone declarar cada uno. Igualmente, cualquier parte podrá requerir a cualquier otra que produzca

---

[22] Nuestra Regla 505(A)(2) de Evidencia, 32 LPRA Ap. VI, protege la "información que es el producto del trabajo de una parte o de la persona que es abogada, consultora, fiadora, aseguradora o agente de dicha parte, preparada u obtenida en anticipación, o como parte, de una investigación o procedimiento civil, administrativo o penal". Íd.

> copia de todas las declaraciones de testigos en poder de dicha parte. Asimismo, tanto las partes como las personas testigos pueden obtener copia de cualquier declaración prestada por ellos anteriormente. Para los propósitos de esta regla, una declaración prestada con anterioridad al juicio incluye cualquier declaración escrita, firmada o aprobada por la persona que la prestó, o cualquier tipo de grabación de una declaración o la transcripción de la misma.
>
> .   .   .   .   .   .   .   .
>
> (Énfasis añadido). Regla 23.1(b) de Procedimiento Civil, 32 LPRA Ap. V.

Al igual que en nuestro esquema probatorio, en nuestras Reglas de Procedimiento Civil pueden identificarse dos categorías dentro del *work product,* protegidas de manera distinta. Véase Pueblo v. Aguayo, 167 DPR 59, 75 (2006) (J. Fiol Matta, Op. concurrente).

La primera incluye aquella prueba preparada o recolectada por el abogado o su agente en preparación o anticipación de un litigio. Íd., pág. 75. En cuanto a estos documentos "se considerarán preparados en anticipación del litigio si, a la luz de su naturaleza y de los hechos particulares, puede decirse que el documento ha sido redactado u obtenido en anticipación al pleito". Cuevas Segarra, *op. cit.,* pág. 854 (haciendo referencia a la Regla 505(A)(2) de las Reglas de Evidencia de 2009, 32 LPRA Ap. VI, y a Banks Mfg. Co. v. Presto Industries, Inc., 709 F.2d 1109, 1118-1119 (1983)). Para descubrir esta prueba, se requiere que "se demuestre [una] necesidad sustancial y un impedimento extraordinario que no permita

a la parte contraria conseguirl[a] sin recurrir al descubrimiento previo al juicio". Pueblo v. Aguayo, *supra*, pág. 75 (J. Fiol Matta, Op. concurrente).

La segunda, por su parte "recoge los procesos mentales del abogado vertidos en objetos tangibles o a la estructuración estratégica de su prueba para su presentación durante el juicio". Íd. Véase también Ades v. Zalman, 115 DPR 514, 525 esc. 3 (1984); S.L.G. Font-Bardón v. Mini-Warehouse, *infra*, pág. 340. Éstos por lo general son excluidos del descubrimiento de prueba siempre que no se demuestre una situación de carácter extraordinario, que requiera una divulgación delimitada. Pueblo v. Aguayo, *supra*, págs. 75-76 (J. Fiol Matta, Op. concurrente). Véase también Ades v. Zalman, *supra*, pág. 524.

Por otra parte, indicamos que se considerará perito a aquella "persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador". S.L.G. Font-Bardón v. Mini-Warehouse, 179 DPR 322, 338 (2010) (citando a *Black's Law Dictionary*, 8va ed., Minnesota, Ed. Thomson West, 2004, pág. 619).[23] Igualmente expresamos que aunque su imparcialidad es considerada para sopesar la credibilidad

---

[23] Véase San Lorenzo Trad., Inc. v. Hernández, 114 DPR 704, 709 (1983) (citando a E. Font, *La prueba de peritos en el proceso civil español*, Barcelona, Ed. Hispano Europea, 1974, págs. 1-2).

que tiene ante el tribunal, no es una condición para calificarle como perito el que sea imparcial. <u>S.L.G. Font-Bardón v. Mini-Warehouse</u>, *supra*, pág. 344 (haciendo referencia a <u>U.S. v. Williams</u>, 81 F.3d 1434, 1441 (7mo Cir. 1996)).

En el caso particular del descubrimiento de prueba relacionado con peritos, la Regla 23.1(c) de Procedimiento Civil de 2009, 32 LPRA Ap. V, hace una diferenciación entre la información descubrible con respecto a un perito consultor y un perito testigo. A continuación, el texto de la regla:

> (c) Persona perita.- El descubrimiento de prueba pericial podrá llevarse a cabo como sigue:
>
> (1) Una parte podrá, a través de interrogatorios, requerir a cualquier otra parte que suministre el nombre y la dirección de las personas peritas que haya consultado y de las que intente presentar en el juicio. **Respecto a estos últimos, podrá requerirse a la parte que exprese la materia sobre la cual la persona perita se propone declarar, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones. A solicitud de parte, el tribunal podrá ordenar el descubrimiento de prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables.**
>
> (2) Una parte podrá hacer uso de los métodos de descubrimiento en relación a hechos conocidos u opiniones de una persona perita que ha sido contratada por otra parte con anterioridad al pleito o en preparación para el juicio y la cual no habrá de ser llamada a testificar solamente si se demuestra circunstancias excepcionales que hagan impráctico para la

parte que interese el descubrimiento obtener hechos u opiniones sobre la misma materia, por otros medios o en el caso que dispone la Regla 32.2 de este apéndice.

.    .    .    .    .    .    .    .

(Énfasis suplido). Regla 23.1(c) de Procedimiento Civil, *supra*.

Del lenguaje anterior, vemos que la Regla 23.1(c) no dispone categóricamente ninguna protección a los borradores de los peritos, ni de las comunicaciones que tenga éste con el abogado con relación al informe pericial.

Con relación al perito consultor, lo hemos definido como aquel consultado por una parte, pero que no se espera que sea llamado a testificar en el juicio. S.L.G. Font-Bardón v. Mini-Warehouse, *supra*, pág. 338 (citando a *Black's Law Dictionary*, *supra*, pág. 619).[24] Acorde con nuestra Regla 23.1(c)(2) de Procedimiento Civil, *supra*, a este perito podrá solicitársele el descubrimiento con relación a hechos conocidos u opiniones emitidas "solamente si se demuestra[n] circunstancias excepcionales que hagan impráctico para la parte que interese el descubrimiento obtener hechos u opiniones sobre la misma materia, por otros medios o en el caso que dispone la Regla 32.2 de [Procedimiento Civil de 2009, 32 LPRA Ap. V.]". Íd. Véase S.L.G. Font-Bardón v. Mini-Warehouse, *supra*, págs. 339-340. Nótese que el lenguaje de nuestra

---

[24]    Véase W.O. Alomar Jiménez & A. Vizcarrondo, *Análisis de Término Tribunal Supremo 2009-2010: Derecho Procesal Civil*, 80 Rev. Jur. UPR 755, 774 (2011).

Regla 23.1(c)(2) de Procedimiento Civil resulta ser similar a lo dispuesto en la Regla 26(b)(4)(C) de Procedimiento Civil Federal, *infra*, la cual discutiremos próximamente.

El perito testigo, por su parte, es aquel identificado como un testigo potencial. S.L.G. Font-Bardón v. Mini-Warehouse*, supra*, pág. 338 (citando a *Black's Law Dictionary*, *supra*, pág. 619).[25] A este perito, distinto al contratado como consultor, se le puede requerir, entre otras cosas, divulgar "la materia sobre la cual la persona perita se propone declarar, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones". Regla 23.1(c)(1) de Procedimiento Civil, *supra*.

La anterior distinción ilustra que los peritos consultores están protegidos por la doctrina del *work product*. S.L.G. Font-Bardón v. Mini-Warehouse*, supra*, pág. 340. Sin embargo, pierden la referida protección cuando el perito consultor es sentado a declarar como testigo. Íd., pág. 342 (haciendo referencia a Douglas v. University Hosp., 150 FRD 165, 168 (ED Mo. 1993)). Conforme a lo anterior, podemos apreciar que los peritos consultores gozan de ciertas protecciones no disponibles para los peritos testigos. Íd., pág. 342. Véanse, además: Cuevas Segarra, *op. cit.*, pág. 852; C.E. Díaz Olivo, *Litigación Civil*, Colombia, 2016, pág. 153. Por tanto,

---

[25] Véase Alomar Jiménez & Vizcarrondo, *supra*, pág. 774.

"la información [que el perito testigo] haya ofrecido estaría sujeta a ser revelada mediante los mecanismos del descubrimiento de prueba". S.L.G. Font-Bardón v. Mini-Warehouse, *supra*, pág. 342. Véase también, Díaz Olivo, *op. cit.*, pág. 153.

Vemos entonces que en nuestro ordenamiento jurídico, generalmente, los peritos consultores y los peritos testigos reciben un trato distinto durante el descubrimiento de prueba. La Regla 23.1 de Procedimiento Civil de 2009, *supra*, reconoce que una parte puede solicitarle a otra que provea cierta información relacionada a sus peritos o producida por éstos, dependiendo de si se trata de un perito consultor o un perito testigo. S.L.G. Font-Bardón v. Mini-Warehouse, *supra*, pág. 339. Como veremos a continuación, igual reconocimiento existe en la Regla 26 de Procedimiento Civil Federal, *infra*.

Evaluado el texto y alcance de nuestra Regla 23 de Procedimiento Civil, *supra*, procedemos a examinar el desarrollo histórico y normativo de su homóloga, la Regla 26 de Procedimiento Civil Federal, Fed. R. Civ. P. 26.

## 2. **Jurisdicción Federal**

El *work product* es una criatura de la casuística dentro del *common law*. E.J. Imwinkelried, *The New Wigmore: Evidentiary Privileges*, sec. 1.3.11c, pág. 117 (3ra ed. 2016). Incluso, en el 1946, según confiere el procedimiento dispuesto en el *Rules Enabling Act*, 28 USCA

2071 *et seq.*, el Comité Asesor (*Advisory Committee*) propuso al Tribunal Supremo federal una enmienda para incorporar el *work product* a la entonces vigente Regla 30 de Procedimiento Civil Federal, Fed. R. Civ. P. 30 (enmendada en 1970), sin éxito.[26]  Véase Advisory Committee for Rules of Civil Procedure, *Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States*, Washington, United States Government Printing Office, 1946, págs. 39-40, en https://www.uscourts.gov/sites/default/files/fr_import/CV06-1946.pdf (última visita 6 de noviembre de 2020).[27]

Sin embargo, al año siguiente de la propuesta del Comité Asesor en el 1946, el Tribunal Supremo federal reconoció la doctrina del *work product* en Hickman v. Taylor, 329 US 495 (1947).[28]  Allí resolvió que resultaba

---

[26]  El *Rules Enabling Act*, 28 USCA 2071 *et seq.*, faculta, entre otros asuntos, al Tribunal Supremo de los Estados Unidos a promulgar y someter al Congreso de los Estados Unidos enmiendas a diversos cuerpos de reglas de los tribunales federales.  Estas propuestas entrarán en vigor a menos que el Congreso disponga otra cosa a tenor con lo dispuesto en dicha ley.  Íd.  Véanse Class v. US, 138 S.Ct. 798, 808 esc. 2 (2018); J.L. Rensberger, *Of hats and robes: Judicial review of nonadjudicative Article III functions*, 53 U. Rich. L. Rev. 623, 645-646 (2019).

[27]  Véase también: R.W. Kirst, *Third option: Regulating discovery of transaction work product without distorting the attorney-client privilege*, 31 Seton Hall L. Rev. 229, 237 (2000) (citado en E.J. Imwinkelried, *The New Wigmore: Evidentiary Privileges*, sec 1.3.11c, pág. 117 esc. 361).

[28]  Cabe destacar que dentro del ordenamiento federal el *work product* se concibe como una doctrina más que como un privilegio.  Véase Noble v. US, 422 US 225, 238 esc. 11 (1975); S.S. Gensler & L.N. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26, en https://www.westlaw.com/Document/I8682be5bc15111ddb9c7909664ff7808/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0; E.J. Imwinkelried, *The validity of the 2010 Rule of Civil Procedure 26 amendment governing the waiver of work product protection: Is the work product doctrine an evidentiary privilege*, 37 U. Dayton L. Rev. 279 (2012). Véase también: E.J. Imwinkelried, *The*

indispensable proteger el producto de la investigación de un abogado como preparación a un litigio, así como sus impresiones mentales, de indagaciones innecesarias por parte de los abogados y partes adversas. Hickman v. Taylor, *supra*, pág. 510.**29**

Las Reglas de Procedimiento Civil Federal fueron enmendadas en el 1970 para -entre otros asuntos- aclarar el alcance del descubrimiento de los materiales de preparación para un litigio en el ámbito federal. F.T.C. v. Grolier Inc., 462 US 19, 25 (1983); Rule 26, *Advisory Committee Notes* (1970). De igual manera, según se desprende de las notas del Comité Asesor de entonces, la enmienda de 1970 a la Regla 24(b)(4) de Procedimiento Civil Federal, Fed. R. Civ. P. 24(b)(4), buscaba: (1) rechazar la visión de algunos tribunales de conferir trato privilegiado a la información del experto por el solo hecho de ser perito, y (2) la tendencia de otros tribunales de incluir esa información dentro de la doctrina del *work product*. Rule 26, *Advisory Committee Notes* (1970). Cabe destacar que lo anterior no hace alusión al *work product* del abogado, sino a la información relacionada al perito, así como producida o utilizada por éste.

---

*New Wigmore: Evidentiary Privileges*, sec. 1.3.11, pág. 112 (3ra ed. 2016).

**29** El texto original al que hacemos referencia lee: "[…] In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel". Hickman v. Taylor, 329 US 495, 510 (1947).

Posteriormente, el Tribunal Supremo federal resolvió el caso US v. Nobles, 422 US 225 (1975) en el contexto de un litigio criminal, donde reconoció que los materiales de una investigación, realizados en preparación a un juicio, podían estar cobijados bajo la doctrina del *work product*. Sin embargo negó extender la protección de esa doctrina a un investigador anunciado como testigo. Esto, tras el Tribunal Supremo federal entender que el acusado renunció a la protección de la doctrina del *work product* sobre los asuntos cubiertos por el testimonio del investigador, al anunciarle como testigo. Así quedó plasmado en la Opinión:

> The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination. […](Escolios y citas omitidas). Íd., págs. 239-240.

Luego, y cónsono con lo resuelto en US v. Nobles, *supra*, se reiteró la norma en F.T.C. v. Grolier Inc., *supra*. En este último caso, el Tribunal Supremo federal

determinó que ciertos memorandos y cartas intra e inter agenciales estaban excluidos del descubrimiento de prueba, por vía de la excepción reconocida por el *Freedom of Information Act*, 5 USCA sec. 552(b)(5), en un pleito en donde una corporación solicitaba el descubrimiento de unos documentos de una investigación realizada en su contra por el *Federal Trade Commission*. Asimismo, hizo referencia a la redacción del 1970 de la Regla 26(b)(3) de Procedimiento Civil Federal, Fed. R. Civ. P. 26(b)(3) (enmendada en 1993), y recalcó que una lectura literal del lenguaje del referido estatuto protegía a las partes de tener que revelar materiales preparados para cualquier litigación o juicio en tanto fuesen confeccionados para ser utilizados en un litigio subsiguiente. F.T.C. v. Grolier, *supra*, pág. 25.**30** De igual modo, indicó que el descubrimiento del *work product* requería demostrar la existencia de una necesidad real, así como la inexistencia de otros medios menos onerosos para obtener la información buscada. Íd.

Subsiguientemente, en Upjohn Co. v. US, 449 US 383 (1984), el Tribunal Supremo federal declinó resolver de manera definitiva si el *work product* del abogado gozaba de una protección absoluta. Íd., pág. 402. Sin embargo, resaltó que la Regla 26 de Procedimiento Civil Federal,

---

**30** El texto original al que hacemos referencia lee: "But the literal language of the Rule protects materials prepared for <u>any</u> litigation or trial as long as they were prepared by or for a party to the subsequent litigation." (Subrayado añadido y bastardillas omitidas). F.T.C. v. Grolier Inc., *supra*, pág. 25.

Fed. R. Civ. P. 26 (enmendada en 1993) vigente entonces -es decir, previo a las enmiendas de 1993- reconocía una protección especial a los procesos mentales del abogado. Upjohn Co. v. US, *supra*, pág. 400. Asimismo, reiteró la norma de Hickman v. Taylor, *supra*, con respecto a los requisitos para descubrir el *work product*. Íd., págs. 400-401.

Posteriormente, en el 1993, la Regla 26 de Procedimiento Civil Federal vigente desde 1970,[31] fue modificada para proveer un marco regulatorio más específico al descubrimiento del informe pericial, sus borradores y el *work product* relacionado al mismo. De igual modo se buscaba facilitar el descubrimiento de información esencial. L.M. Keller, *The December 1993 Amendments to the Federal Rules of Civil Procedure--A Critical Analysis*, 12 Touro L. Rev. 7, 76 (1995). Véase Rule 26*, Advisory Committee Notes* (1993). El Comité Asesor expresó preocupación con la redacción vigente desde el 1970 debido a, entre otros factores, la vaguedad y superficialidad con la que algunos peritos contestaban los interrogatorios, lo cual incidía sobre una adecuada preparación para contrainterrogarlos o deponerlos. Véase Rule 26, *Advisory Committee Notes* (1993). De igual modo, reconoció que la entonces propuesta Regla 26(a)(2)(B) de Procedimiento Civil Federal de 1993, Fed. R. Civ. P.

---

[31] Regla 26 de Procedimiento Civil Federal, Fed. R. Civ. P. 26 (enmendada en 1993).

26(a)(2)(B) (enmendada en 2010) no impedía que el abogado asistiese a algunos expertos en la preparación del informe, siempre que el escrito reflejase el testimonio del testigo que lo suscribía. Véase Rule 26, *Advisory Committee Notes* (1993).**32** Sin embargo, explicó que la exigencia de un informe era para revelar, entre otras cosas, la información considerada por el testigo, así como la base de la misma. Íd. Razonó el Comité Asesor de entonces que:

> **[…] [g]iven this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be**

---

**32** El texto al que hacemos referencia lee como sigue:

    .    .    .    .    .    .    .    .

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. **Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.**

    .    .    .    .    .    .    .    .

> Rule 26, *Advisory Committee Notes* (1993). Véanse además: Regional Port Authority of Louisville v. LFG, LLC, 460 F.3d 697 (6to Cir. 2006).

**used in forming their opinions —whether or not ultimately relied upon by the expert— are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.**

.    .    .    .    .    .    .    .

(Énfasis añadido). Rule 26, *Advisory Committee Notes* (1993). Véase, además: <u>Regional Port Authority of Louisville v. LFG, LLC</u>, 460 F.3d 697 (6to Cir. 2006).

De la misma forma, la Regla 26(b)(5)(A) y (B) de Procedimiento Civil Federal, Fed. R. Civ. P. 26(b)(5)(A) y (B) (enmendada en 2010), establecía una metodología para solicitar que alguna información sujeta a descubrimiento de prueba fuera puesta ante la consideración del Tribunal para determinar si ésta estaba protegida por algún privilegio o doctrina. Véase Rule 26, *Advisory Committee Notes* (1993).[33]

---

[33]  El texto leía:

.    .    .    .    .    .    .    .

(5) Claiming Privilege or Protecting Trial-Preparation Materials.

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must

Tras las enmiendas de 1993, los foros apelativos federales desarrollaron varias teorías para el manejo de la Regla 26 de Procedimiento Civil Federal, *supra*, vigente entonces. Así pues, nos resulta de particular interés lo resuelto por el Sexto Circuito del Tribunal de Apelaciones Federal en Port Authority of Louisville v. LFG, LLC, *supra*.

En ese caso, dicho foro evaluó una controversia donde se buscaba descubrir los borradores de un informe pericial, así como las comunicaciones entre un perito testigo y los abogados de la parte que lo contrató. Esto, tras la Autoridad Regional de Puertos de Louisville (Autoridad) solicitar que se dejara sin efecto cierta orden para descubrir documentos que le fueron entregados a sus peritos testigos. Ello, bajo el fundamento de que contenían producto de trabajo de los abogados de la Autoridad. Íd., pág. 713.

En su análisis, el Sexto Circuito del Tribunal de Apelaciones Federal identificó la existencia de dos vertientes de la norma. La primera, conocida como *Haworth Line cases*, sostenía que el *work product* del abogado no era descubrible sólo por el hecho de que haya sido

---

not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved. Regla 26(b)(5)(A) y (B) de Procedimiento Civil Federal, Fed. R. Civ. P. 26(b)(5)(A) y (B) (enmendada en 2010).

compartido con un perito testigo. _Íd._, pág. 714.**34** Esta

vertiente planteaba, según algunos foros, que para

reconocer la inaplicabilidad de la doctrina del _work_

_product_ debía existir un lenguaje claro y no ambiguo. _Íd._

(citando a Haworth, Inc. v. Herman Miller, Inc., 162 FRD

289, 292-296 (W.D. Mich. 1995)).

La segunda vertiente, adoptada por, entre otros

tribunales, el Sexto Circuito del Tribunal de Apelaciones

Federal, sostenía que toda la información provista a los

peritos testigos, incluyendo la opinión producto del

trabajo del abogado, no estaba protegida. Regional Port

Authority of Louisville v. LFG, LLC, _supra_, pág. 714.**35**

Esta última se fundamentaba principalmente en las notas

del Comité Asesor. _Íd._ El Sexto Circuito del Tribunal de

Apelaciones Federal razonó que ni el texto de la regla

entonces vigente, ni las notas del Comité Asesor creaban

distinciones con respecto al alcance de la palabra

---

**34** Para ilustrar esta postura, el Sexto Circuito del Tribunal de Apelaciones Federal cita a: Toledo Edison Co. v. G A Techs., Inc., 847 F.2d 335, 339-341 (6to Cir. 1988); Bogosian v. Gulf Oil Corp., 738 F.2d 587, 595 (3d Cir. 1984); Haworth, Inc. v. Herman Miller, Inc., 162 FRD 289, 292-296 (W.D. Mich. 1995); Smith v. Transducer Tech., Inc., 197 FRD 260, 261-262 (D.Vi. 2000); Krisa v. Equitable Life Assurance Soc'y, 196 FRD 254, 259-261 (M.D.Pa. 2000); Estate of Moore v. R.J. Reynolds Tobacco Co., 194 FRD 659, 663-664 (S.D. Iowa 2000). Véase también _In re_ Cendant Corp. Securities Litigation, 343 F.3d 658, 663-665 (3er Cir. 2003)(Garth, J., Op. concurrente); Gensler & Mulligan, _supra_; E.S. Epstein & M.M. Martin, _The attorney-client privilege and the work-product doctrine_, 2da ed., Estados Unidos, American Bar Association, 1989, págs. 162-164.

**35** Para ilustrar esta postura, el Sexto Circuito del Tribunal de Apelaciones Federal cita a: _In re_ Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Cir. Fed. 2001); Karn v. Ingersoll-Rand_,_ 168 FRD 633, 637-641 (N.D. Ind. 1996); Gall v. Jamison (_In re_ Gall), 44 P.3d 233, 238-239 (Colo. 2002); Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co._,_ 412 F.3d 745, 751 (7th Cir. 2005). Véase además Douglas v. University Hosp., 150 FRD 165, 167-168 (E.D. Miss., Eastern Div. 1993).

"materiales" en este contexto, por lo que debía entender que esa distinción no se pretendía. En particular, expresó que:

.   .   .   .   .   .   .   .

> It is unclear from the text alone the extent of the required disclosure. The Advisory Committee Notes are equally ambiguous: "Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts ... are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Since neither the text of the Rule nor the Advisory Committee Notes places any qualifier as to the extent of the "information," Fed.R.Civ.P. 26(a)(2)(B), or "materials," Fed.R.Civ.P. 26, advisory committee note, 1993 amendments, given to testifying experts, we must conclude that none was intended. Thus, we read Rule 26(a)(2) as requiring disclosure of *all* information provided to testifying experts.
> .   .   .   .   .   .   .   .

(Bastardillas en el original). Íd., pág. 716.

Tras este análisis, el Sexto Circuito del Tribunal de Apelaciones Federal decidió que toda la información brindada al perito testigo debía ser descubierta y entregada a las demás partes. Íd., págs. 716-717.

Posteriormente, la Regla 26 de Procedimiento Civil Federal vigente desde 1993,[36] fue nuevamente enmendada en el 2010. El cambio más relevante a nuestra controversia corresponde a la Regla 26(b)(4)(B) y (C), la cual en la actualidad lee:

.   .   .   .   .   .   .   .

---

[36] Regla 26 de Procedimiento Civil Federal, Fed. R. Civ. P. 26 (enmendada en 2010).

(B) Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) Trial-Preparation Protection for Communications Between a Party's Attorney and **Expert Witnesses.** Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

> (i) relate to compensation for the expert's study or testimony;

> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

> .    .    .    .    .    .    .    .

(Negrillas añadidas). Regla 26(b)(4)(B) y (C) de Procedimiento Civil Federal, Fed. R. Civ. P. 26(b)(4)(B) y (C).

En los comentarios a la precitada regla, el Comité Asesor indicó, en síntesis, que la enmienda buscaba evitar el descubrimiento de los borradores del informe pericial, así como las teorías e impresiones mentales del abogado. Más en detalle, el Comité Asesor expresó:

> Rule 26. Rules 26(a)(2) and (b)(4) are amended to address concerns about expert discovery. The amendments to Rule 26(a)(2) require disclosure regarding expected expert testimony of those expert witnesses not required to provide expert reports and limit the expert report to facts or data (rather than "data or other information," as in the current rule) considered by the witness. Rule 26(b)(4) is amended to provide work-product protection against discovery regarding draft expert disclosures or

reports and — with three specific exceptions — communications between expert witnesses and counsel.

In 1993, Rule 26(b)(4)(A) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including — for many experts — an extensive report. **Many courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports.** The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts — one for purposes of consultation and another to testify at trial — because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. **At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.**

Subdivision (a)(2)(B). Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witness in forming" the opinions to be offered, rather than the "data or other information" disclosure prescribed in 1993. <u>**This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications.**</u>

<u>**The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel.**</u> At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert,

> from whatever source, that contains factual
> ingredients. The disclosure obligation
> extends to any facts or data "considered" by
> the expert in forming the opinions to be
> expressed, not only those relied upon by the
> expert.
>
> .    .    .    .    .    .    .    .
>
> (Subrayado y negrillas añadidas). Rule 26,
> *Advisory Committee Notes* (2010).

Como vemos, ahora la regla contiene una **disposición expresa** prohibiendo el descubrimiento de los borradores preparados por los peritos testigos y el *work product* derivado de las comunicaciones de éstos con los abogados de la parte que los contrató. Reglas 26(c)(4)(B) y (C) de Procedimiento Civil Federal, Fed. R. Civ. P. 26(c)(4)(B) y (C). Dicha enmienda, incorporada en el 2010, buscaba evitar que las partes obtuvieran acceso a comunicaciones entre el perito testigo y el abogado, así como borradores anteriores de los informes, ante la ausencia de una expresión categórica prohibiéndolo bajo el lenguaje de la regla previamente en vigor. Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1194 (11vo Cir. 2013) (haciendo referencia a Rule 26*, Advisory Committee Notes* (2010)). De este modo se buscó expresamente proteger las comunicaciones entre los peritos testigos y abogados, así como reducir los costos del litigio, evitando que las partes tuviesen que incurrir en la contratación de dos grupos de peritos. Íd.**37**

---

**37** Cabe mencionar la comparación que hace el tratadista Cuevas Segarra entre la Regla 26 de Procedimiento Civil Federal, luego de las

Esbozado el marco normativo puertorriqueño pertinente y, tras ilustrarnos con el tracto legislativo ocurrido a nivel federal, resolvemos.

### III.  Análisis y disposición del caso

La presente controversia surge como consecuencia de una deposición tomada por el Municipio al CPA Rivera

_____

enmiendas de 2010, y nuestra Regla 23 de Procedimiento Civil, 32 LPRA Ap. V:

.    .    .    .    .    .    .    .    .

En la jurisdicción federal, las enmiendas a la Regla 26 de 2010, **extendieron la protección del producto de trabajo del abogado a los borradores de los informes de los peritos retenidos para testificar, y a borradores de informes de aquellos peritos no retenidos para testificar. Regla 26 (a) (2) (C).** Con tres específicas excepciones, las comunicaciones con los peritos contratados al amparo de la Regla 26 (a) (2) (B), están protegidas independientemente de su forma, así como las preparadas para suplementar un informe previo.  Por vía de excepción, y a tenor con la Regla 26 (b) (3) (A) (ii), los borradores del informe pericial pueden ser descubiertos si la parte establece: (1) que tiene una necesidad substancial de los materiales para preparar su caso; (2) y ésta no puede obtener sin opresión indebida, unos materiales equivalentes de cualquier otra manera; (3) **la protección no se extiende al descubrimiento de opiniones a ser ofrecidas por el experto o al descubrimiento del desarrollo y las bases de sus opiniones.** O'Connor's, Federal Rules: Civil Trials, 2011, págs. 481-482. Tampoco a las comunicaciones relacionadas con su compensación; **así como aquellos hechos o data provistos por el abogado que el perito consideró al formar su opinión y las asunciones o presupuestos provistos al abogado sin prueba que el experto descansara al formular su opinión.** (Énfasis añadido).  J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Ediciones JTS, T. III, pág. 881

Asimismo, no observamos sugerencias para enmendar nuestra Regla 23 de Procedimiento Civil en esa dirección. Véase Comité Asesor Permanente de las Reglas de Procedimiento Civil, *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, diciembre de 2007, págs. 262-276; Comité Asesor Permanente de las Reglas de Procedimiento Civil, *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, febrero de 1996, págs. 92-101. (En ninguno de los informes se planteó la necesidad de, ni se sugirió, proteger los borradores de los peritos testigos, así como las comunicaciones habidas entre éstos y los abogados de las partes en las enmiendas propuestas a la Regla 23).

Robles quien, según quedó establecido, es un perito testigo. Tanto los hechos antes esbozados como los documentos presentados por las partes así lo atestiguan. Durante la deposición del CPA Rivera Robles, McNeil objetó las preguntas efectuadas por el Municipio con relación a la redacción y contenido del informe pericial, así como los borradores de éste y las comunicaciones habidas entre el perito y los abogados de McNeil respecto al informe pericial y su contenido. Dicha objeción se levantó oportunamente luego de que el CPA Rivera Robles admitiera que la representación legal de McNeil había comentado el borrador del informe e, incluso, solicitado que se le realizaran cambios. Acto seguido, McNeil alegó que tanto los borradores como las comunicaciones del perito testigo con los abogados de la recurrida estaban cobijados por la doctrina del *work product*.

El Tribunal de Primera Instancia avaló esa posición al declarar "No ha lugar" su descubrimiento y entrega al Municipio. Igual proceder tuvo el Tribunal de Apelaciones, quien primeramente estableció que el informe pericial del CPA Rivera Robles **se alimentó** de la experiencia de litigio del abogado de McNeil, quien le compartió sus impresiones mentales, conclusiones y teorías legales. Asimismo, el foro apelativo intermedio reconoció que resultaba claro que la información requerida bajo la Regla 23.1(c) de Procedimiento Civil de 2009, *supra*, era descubrible y no estaba cobijada bajo la doctrina del *work*

*product*.  Sin embargo, en lugar de adherirse al texto de nuestra Regla 23 de Procedimiento Civil de 2009, *supra*, decidió incorporar por la vía judicial -por entenderlas persuasivas y conducentes a un resultado más justo- las disposiciones contenidas en las Reglas 26(b)(4)(B) y 26(b)(4)(C) de Procedimiento Civil Federal, *supra*.  Como ya establecimos, estas últimas contienen una prohibición **expresa** al descubrimiento de los borradores de los informes periciales del perito testigo, así como las comunicaciones e impresiones que hayan compartido el perito testigo y el abogado con relación a éstos.

Como es sabido, en nuestro ordenamiento jurídico impera la política de que el descubrimiento de prueba se efectuará de manera amplia y liberal, salvo materia impertinente o privilegiada.  En el caso de autos, no albergamos duda de que los documentos solicitados por el Municipio a McNeil son pertinentes a la controversia, dado que los borradores y las comunicaciones del perito testigo, una vez confrontados con su testimonio, pudieran llevar a la producción de prueba admisible o a evidencia inadmisible que lleve a la obtención de prueba admisible.

Por otra parte, en cuanto a la protección del *work product* a los borradores y comunicaciones de los peritos, observamos que la redacción de la Regla 26 de Procedimiento Civil Federal, *supra*, contrasta con nuestra Regla 23 de Procedimiento Civil de 2009, *supra*, pues la primera contiene una prohibición **expresa** al descubrimiento

de los borradores del informe pericial y de las comunicaciones entre el perito testigo y el abogado con relación a dichos informes. Como pudimos observar del derecho federal antes citado, el reconocimiento de esa prohibición en esa jurisdicción **ocurrió hace poco más de diez años, mediante una acción legislativa afirmativa, clara y expresa, luego de debates y enmiendas**, y siguiendo el proceso dispuesto en el *Rules Enabling Act*, *supra*. Un procedimiento similar sería necesario para incorporar esa protección en nuestra jurisdicción, si este Tribunal hubiese adoptado alguna disposición a esos efectos y la hubiera remitido a nuestra Asamblea Legislativa para su aprobación, conforme al trámite dispuesto en el Artículo V, Sección 6 de la Constitución de Puerto Rico. Art. V, Sec. 6, Const. PR, LPRA, Tomo 1. Tampoco la Asamblea Legislativa ha aprobado enmiendas a la regla a tal fin. Hasta el momento, la aplicación que propone el foro apelativo intermedio del estatuto federal no ha sido incorporada a nuestras Reglas de Procedimiento Civil vigentes y, por lo tanto, no puede regir la disposición de esta controversia.

De nuestra Regla 23.1(c) de Procedimiento Civil sí podemos interpretar que, para utilizar los mecanismos de descubrimiento de prueba contra un **perito consultor**, se requiere que se demuestren circunstancias excepcionales. Esto contrasta con el descubrimiento amplio y liberal que se permite con relación a los **peritos testigos**, quienes,

además de tener que proveer los resúmenes, opiniones y teorías de lo que declararán, el tribunal podrá ordenarles que descubran "prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables". 32 LPRA Ap. V, R. 23.1(c)(1).

El informe pericial del perito testigo de McNeil no fue un documento preparado en anticipación de un pleito, sino uno realizado por un tercero experto en la materia, presumiblemente imparcial, con el propósito de ilustrar al tribunal sobre determinado asunto. El mismo debía ser el resultado del análisis, conocimiento, experiencia, razonamiento y conclusión pericial del experto en cuestión, amparándose en la información que tuviera ante su consideración, sin la intervención o aprobación de la parte o abogado que le contrate. Como custodios de la búsqueda de la verdad en los procedimientos judiciales, y en ausencia de disposición estatuaria al respecto, los tribunales no podemos avalar ni fomentar la práctica de que los peritos sometan informes periciales preparados al gusto de los abogados que los contratan. Tampoco podemos imprimirle la protección de la doctrina del *work product* a esos borradores de peritos testigos sólo porque hubo una intervención de los abogados en éstos.

Por tanto, en vista de la política pública que busca un descubrimiento de prueba amplio y liberal, así como en ausencia de una regla que claramente lo impida, determinamos que tanto los borradores del informe pericial

de un perito testigo, como las comunicaciones entre el perito testigo y el abogado con relación a tales informes, son descubribles bajo nuestra actual Regla 23 de Procedimiento Civil, *supra*. El lenguaje utilizado en la regla no permite una interpretación restrictiva y excepcional con relación al descubrimiento de tales borradores y/o comunicaciones.

## IV. Conclusión

A base de lo anterior, se revoca tanto la *Sentencia* del Tribunal de Apelaciones de 20 de abril de 2018 como la *Orden* emitida por el Tribunal de Primera Instancia el 26 de enero de 2018. Se devuelve el caso al foro primario para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Se dictará *Sentencia* de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


McNeil Healthcare, LLC

    Recurrida

       v.                    CC-2018-502       *Certiorari*

Municipio de Las Piedras,
*et al.* [II]

    Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 15 de marzo de 2021.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se revoca tanto la *Sentencia* del Tribunal de Apelaciones de 20 de abril de 2018 como la *Orden* emitida por el Tribunal de Primera Instancia el 26 de enero de 2018. Se devuelve el caso al foro primario para que proceda de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez no intervino. La Jueza Presidenta Oronoz Rodríguez no interviene.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo